The Department of Public Works and Buildings of the State of Illinois for and in Behalf of the People of the State of Illinois, Plaintiff-Appellee, v. Edward C. Gieseking, Sr., et al., Defendants-Appellants.

Gen. No. 67–108.

Fifth District.

April 1, 1969.

Durr & Durr, of Edwardsville, for appellants.

William G. Clark, Attorney General of State of Illinois, of Chicago (Harold G. Andrews and Horace L. Calvo, Special Assistant Attorneys General, of counsel), for appellee.

EBERSPACHER, J.

This is an appeal from the order denying appellants' post-trial motion for a new trial in an Eminent Domain proceeding. Prior to the hearing, which resulted in the rendition of the jury's verdicts, title to the property involved in this appeal was vested in the State of Illinois, pursuant to "quick take" proceedings under the Eminent Domain Act;[1] the landowners had petitioned and received 80% of the monies deposited, and had filed their cross petitions for damages.

The proceedings involved the taking of portions of an approximate 200-acre tract, which we shall refer to as the Hosto tract, and portions of an 80-acre tract, which we shall refer to as the Tegmeyer tract. Both the Hosto tract and the Tegmeyer tract, which were adjacent, were bisected by Federal Aid Interstate Route No. 70. From the Hosto tract the State had taken Tract 168 consisting of 9.01 acres and Tract 169, consisting of 9.77 acres, both in fee; the State also had taken easements for the purpose of channel changes on Tract 168C consisting of 1.92 acres and Tract 169C consisting of 0.46 acres; the State had also taken temporary construction ease-

---

[1] C 47, § 2.1 et seq., Ill Rev Stats 1963.

ments on Tract 168T consisting of 3.17 acres and Tract 169T consisting of 0.20 acres. From the Tegmeyer tract the State had taken Tract 167 consisting of 10.03 acres, in fee.

Upon the jury returning their verdicts,[2] each of which was within the range of the evidence, the court entered them verbatim in the Minute Record and there recited that they were signed by all 12 jurors, naming them; entered an order discharging the jury and the following: "Judgments entered on the verdicts per order to be filed herein." No formal written order of judgment was ever filed. Appellants have pointed to section 68(1) of the Civil Practice Act (c 110, Ill Rev Stats 1963) which provides: "Promptly upon the return of a verdict, the court shall enter judgment thereon," and contend failure to follow the statute is a fatal error, in effect that there is no valid judgment. Their position, of course, is that in order to comply with the time requirement of a post-trial motion they had to treat the situation as if a judgment had been properly entered, although the post-trial motion raised the matter of the absence of a judgment.

The State points out that the only matter for determination in the hearing was the amount of final just compensation and that the record in this case includes

---

[2] "We, the jury, find the just compensation to be paid the Defendants for the taking of Tract 167 as described in the petition to be $3,350.00.

"We, the jury, find the damages to be paid the defendants for damages to the remainder to be $4,500.00.

"We, the jury, find the just compensation to be paid the defendants for the taking of Tracts 168 and 169 as described in the petition to be $6,300.00.

"We, the jury, find the just compensation to be paid the defendants for the taking of Tracts 168–C, 168–T, 169–C and 169–T as described in the petition to be $650.00.

"We, the jury, find the damages to be paid the defendants for damages to the remainder to be $2,500.00."

the verdicts followed by the sentence, "Which verdict is signed by all 12 jurors," followed by, and immediately preceding the certification of the official court reporter to the report of proceedings, the following sentence: "Thereupon the court entered judgment on the verdicts." This they contend shows that a judgment was pronounced by the court.

 In eminent domain, a judgment becomes effective when pronounced by the court and is not dependent upon the signing of an order; it is a law proceeding and not a chancery proceeding. Chicago Great Western R. Co. v. Ashelford, 268 Ill 87, 91–92, 108 NE 761. Here the final order appealed from is properly the order denying the post-trial motion, which is a final appealable order.

██ ██ The general rule is that a judgment must designate the parties for and against whom it is rendered or it will not be a valid final judgment. Kaley v. Carr, 348 Ill App 151, 108 NE2d 512, and cases cited therein. We do not condone entry of a purported judgment which does not meet that requirement; the parties are entitled to know precisely the status of the matter and where they stand, without searching the record, once the issues have been determined. Even assuming the judgments here to be defective, on such bases we would not remand for a new trial, and if the verdict is sufficient to sustain the judgments we could affirm the lower court proceedings, granting leave to the State to move for a proper judgment on the verdicts, Meyer v. Village of Teutopolis, 131 Ill 522, 556, 23 NE 651, or in the alternative could exercise our appellate and supervisory powers, (Supreme Court Rule 366(a)), to correct any technical deficiencies observed in the lower court. While the appellants may have been inconvenienced by the procedure followed, we fail to comprehend how they have in any way been prejudiced.

Appellants contend that the court erred in allowing evidence as to the purchase price of a portion of the Hosto tract; (80 acres which defendant Hosto had purchased

from parties named Gusewelle approximately 5 years prior to the filing of the Petition in this cause), over appellants' objection, and that the owners of both tracts were so prejudiced by the introduction of that evidence that they were all entitled to a new trial.

Mr. Marshall, one of the State's witnesses, testified that the highest and best use of both the Hosto and Tegmeyer tracts was agricultural with a potential for rural residence. On cross-examination he testified that land in Madison County, in which the tracts are situated, had increased steadily in value in the ten years preceding the taking, faster than the statewide average, and that he was familiar with the elements which had created the upsurge in land values. Mr. Piepergerdes, the other State witness, testified that the highest and best use of both tracts was for agricultural purposes, and on cross-examination stated that he had not taken residential possibilities into consideration in determining values but had only considered the land for agricultural purposes.

Appellants here contend that since the State's two appraiser witnesses made no comparative estimates to other tracts, were not residents of Madison County, and were not registered brokers or salesmen, and had made no sales or purchases of either agricultural tracts or subdivision tracts in Madison County, that the testimony of Marshall "should have been disregarded and the jury told to ignore it" and that the court should have excluded the testimony of Piepergerdes. Had motions to this effect concerning the testimony of otherwise qualified witnesses been timely made below we would have little difficulty in sustaining the trial court's denial of them; here we do not consider such contentions since they were never made in the trial court.

Mr. Tegmeyer, a broker and experienced appraiser, and one of the owners of the Tegmeyer tract, testified on behalf of appellants with reference to the Tegmeyer tract. He considered that its highest and best use in April 1964

110

was country residential and that people want to "have the rural atmosphere" and "are buying tracts of land of 5 acres." (The hearing was held in December 1966.) He testified the Tegmeyer tract was located 1½ miles from Troy and that there was residential construction in the area of the Tegmeyer and Hosto tracts within the 3 years previous to the filing of the petition. He admitted that the land was zoned agricultural and that the owners had never made a request for a zoning change.

Mr. Hosto testified that he had bought and sold five different laundry, linen supply and cleaning businesses in as many states; was an officer in two companies presently engaged in that service; had organized and was an officer in a plastic firm; owned residential properties in approximately 15 towns and a subdivision in an adjoining county from which lots were sold for mobile homes. He testified that he had put together 4 different tracts in Missouri to form a 1,340-acre farm, and that "was strictly farming over there" and continued that the Hosto tract in this proceeding was put together by purchases from 4 different owners and was bought for a certain purpose and was not bought for agricultural purposes. In response to the question as to what use was being made of the tract at the time of the filing of the petition he stated, "we bought it as an investment with the idea of flooding that whole valley without running water on anyone else, but it was used as cattle grazing and farmland as a holding operation." He testified that he had taken out some of the undesirable trees but had left walnuts and good oaks "which adds to the beauty of the ground when we go to sell it." He testified that he was president of Modern Courts, Incorporated, O'Fallon, which had a mobile homes park, and had laid out a lot of mobile home sites. He also testified that he had a mobile home site on a 10-acre strip on the Hosto tract on which one of his employees lived, and that the highest and best use of the tract at the time of taking was country residential, and in response

111

to the question "Tell the jury what you mean by that?" referring to country residential, said "Well, I found it was readily saleable in 5-acre tracts. I have had a multitude of inquiries constantly." He testified that the Hosto tract was a mile and a quarter from the city limits of Troy, and that there had been some building out from Troy toward the tract. On cross-examination he testified that approximately 2 years previous to the hearing 39 acres of the Hosto tract had been rezoned from agricultural to highway business and that he had never asked to have the rest of it rezoned. It was after this testimony that he was asked on cross-examination, after testifying that he purchased it in April 1959, the price he paid for the north 80 acres. Over objection and a denied motion for mistrial, Hosto was directed to answer and was allowed to show that it could only be bought on an installment contract and interest paid over a five-year period.

Another witness for appellants testified that the highest and best use of both the Tegmeyer and Hosto tracts, at the time of taking, was agricultural with a potential for tract subdivision.

██ ██ The question of whether sales of property are voluntarily made, and therefore admissible, rests largely in the discretion of the trial court, and the degree of similarity required between property to be taken and other tracts of land shown in evidence cannot be governed by fixed rule but the admissibility of such testimony must, in each instance, be determined by the trial judge within the proper limits of his discretion. Forest Preserve Dist. v. Folta, 377 Ill 158, 36 NE2d 264.

Here evidence was presented of the purchase price of a portion of the Hosto tract in a hearing that involved both the Tegmeyer and Hosto tracts. In School Trustees v. LaSalle Nat. Bank, 21 Ill2d 552, 173 NE2d 464, the Court reiterated the rule that no positive rule can be laid down and that the matter rested within the discre-

tion of the trial court. The Court in that case further pointed out, at the end of the opinion:

"We have held in other eminent domain actions that where there are other witnesses and evidence as to value on both sides, even the improper admission, Trustees of Schools v. Kirane, 5 Ill2d 64, or the improper exclusion, Forest Preserve District of Cook County v. Krol, 12 Ill2d 139, of value evidence does not constitute reversible error where the jury has the opportunity of weighing the conflicting evidence admitted on behalf of both sides."

■ The rule is generally stated as requiring that the sale be a voluntary one, of land similarly situated, and that the sale was about the time of the transaction in question, or recent, or not too remote. A sale seven years and three months prior to the condemnation was held at not being too remote in Forest Preserve Dist. v. Keen, 298 Ill 37, 131 NE 133. Here no one suggested to the court that value evidence properly admissible as to the Tegmeyer tract might not be admissible as to the Hosto tract, and appellants both below and here contend that the evidence of purchase price was prejudicial to all owners; they made no motion and offered no instruction to limit the evidence of purchase price of a portion of the Hosto tract to the Tegmeyer tract. They rely on the holdings to the effect that the price the owner paid may be considered in determining value provided the sale was recent with no change in conditions or marked fluctuations in values since the sale as stated in Forest Preserve Dist. v. Krol, 12 Ill2d 139, 147, 145 NE2d 599, 603.

■ ■ It has long been the rule and established practice in condemnation cases in Illinois to permit an owner of property to be examined as to the price which the owner paid for the property. Forest Preserve Dist. v. Folta, supra; Forest Preserve Dist. v. Hahn, 341 Ill 599,

113

173 NE 763; Brown v. Calumet River Ry. Co., 125 Ill 600, 18 NE 283, providing the price paid will afford a fair indication of its value at the time the petition was filed.

In Department of Public Works and Buildings v. Bloomer, 28 Ill2d 267, 191 NE2d 245, the time between the option for purchase of the land was made 5 years before the filing of the petition, as in the present case was the time between contract and petition. There the Court pointed out that the defendants had been given considerable latitude in their evidence concerning improvements and their efforts to upgrade. They also pointed out that, as here, the whole tract was not taken, and the value of the whole was not the ultimate issue to be decided by the jury, but only one item from which the value of the portion taken and the damage to the remainder might be inferred, and as a result any prejudicial effect was therefore necessarily indirect. Citing the Krol and Hahn cases, supra, the Court said at page 274, 191 NE2d 250:

> "The price paid by the owner may properly be considered in eminent domain proceedings so long as the figure *is not misleading* because of marked fluctuations in value, changed conditions, and the passage of time since the acquisition." (Italics ours.)

and concluded that the jury was not misled by the evidence, and affirmed.

In the present case, only portions of both the Tegmeyer and Hosto tracts were taken, and the appellants were given wide latitude in their evidence of improvements and speculative prospects for the land. Not only was the latitude great in this respect, but Hosto made it quite clear, over objections, that his purchase of the tract was for the purpose of subdivision, although it was admitted that the tracts were used for agricultural purposes since their acquisition, with the exception of approximately 10 acres which was taken and which was a mobile home site, and were being used for and zoned for agricultural purposes at the time of taking. According to Hosto, the

agricultural use was only for holding purposes, and he made it clear that his intention at the time of purchase was speculative with subsequent assurance of success. The nature of Hosto's testimony was described by the trial judge in chambers after hearing the arguments of counsel on the question of whether the purchase price of the 80 acres was admissible and before his denying the motion for mistrial and overruling the objection to the question as "He has put it pretty well before the jury what he bought the land for and what he intended to do with it and particularly with that rezoning situation, he has testified to its highest and best use and that was not for buildings, not for golf courses . . . . Residential. That is what he says is the highest and best use and I think that is what that is going to be."

The defendants argue with great force and logic that once a juror knows what a landowner paid for a piece of land, the landowner's chance for a fair trial ends because the juror will then see to it that the landowner will not make a profit by condemnation. We sympathize with this argument, and although the trial court is vested with discretion in the situation, care should be taken in admitting the evidence because of its persuasive and possibly prejudicial effect. We, however, are bound by the expressions of our Supreme Court on this matter.

The trial court and the jury had heard the evidence, undenied, that land values in Madison County had increased in value in the recent 5 years, and also that the demand for residential sites had increased. As a result, we cannot say that the jury was misled because of the changed market. They were thoroughly advised of it.

We, therefore, conclude that under the holdings in the most recent Supreme Court cases, Bloomer and School Trustees v. LaSalle Nat. Bank, supra, the trial court did not abuse his discretion in denying the motion for mistrial and holding the evidence of purchase price admissible. Such conclusion leads us to further conclude that the

115

court did not err in refusing defendant's instruction No. 2 directing the jury not to consider the purchase price of any lands as evidence to be considered, although neither that instruction nor any other instructions are set forth in the abstract.

We, therefore, remand the cause for the entry of proper judgments on the verdicts, and in all other respects affirm.

Affirmed and remanded with directions.

GOLDENHERSH and MORAN, JJ., concur.