WILLIAM WAKEFIELD, Plaintiff-Appellee, *v.* WILLIAM R. KERN, Defendant-Appellant.—(CHARLES BOYER *et al.*, Defendants.)

Second District   No. 77-108

Opinion filed March 30, 1978.

William Kern, of Villa Park, for appellant.

No appearance for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Plaintiff-appellee, William Wakefield (hereinafter plaintiff), filed a small claims complaint against the defendants, Charles Boyer, Mark Klein, Brookhaven Stables and William R. Kern, for their negligent handling of a horse which resulted in property damage to his automobile. The trial court entered judgment for plaintiff for the damage to his vehicle in the amount of $948.99 plus costs. Only the defendant-appellant, William R. Kern (hereinafter defendant), pro se, has appealed from the entry of this judgment for the plaintiff.

Briefly, before reaching the substantive issue presented, we must resolve a procedural point that is apparent from our perusal of this record presented by the defendant on appeal. It is unascertainable from this record whether the small claims judgment was entered against the defendants jointly or individually. The jurisdictional determination of whether an order is appealable lies in the substance and not the form of the judgment or order. *Andros v. Hansen Realty Co.* (1976), 44 Ill. App. 3d 635, 358 N.E.2d 664.

■■■ As a general rule, a judgment must designate the parties for and against whom it is entered or it will be an invalid final judgment. (*Waters v. Chicago & Eastern Illinois R.R. Co.* (1973), 13 Ill. App. 3d 661, 300 N.E.2d 521.) Where such requirements for judgment are not met and the status of the matter and issues are determined by the trial court, this court will correct any technical deficiencies in the order if the parties are not prejudiced thereby. (*Department of Public Works & Buildings v. Gieseking* (1969), 108 Ill. App. 2d 105, 246 N.E.2d 707.) Here, reference is made to the judgment for plaintiff in the amount of $948.99 entered on October 27, 1976, in the report of proceedings certified by the trial court, on the docket sheet in the trial court, and in the denial of defendant's motion for a new trial and to vacate the judgment. We believe these notations of the trial court in this small claims proceeding properly demonstrate that the trial court determined the rights and liabilities of the parties and entered a final and appealable order which granted plaintiff his requested relief. (*Andros v. Hansen Realty Co.* (1976), 44 Ill. App. 3d 635.) Although it is unclear whether the trial court's order imposes liability jointly against the defendants, it is apparent that the trial court's order does make the defendant, Kern, liable for the full amount of the judgment, and it is the finality of this judgment which is adequate to form a basis for our review. (*Royer v. Bedwell* (1977), 47 Ill. App. 3d 331, 361 N.E.2d 1190.) Accordingly, this court will consider the propriety of the trial court's judgment for plaintiff as final and appealable in its application to the defendant, William Kern, only.

■■ Next we observe that the plaintiff has not filed an appearance or brief in this court. Under well-established principles, the judgment of the trial court in favor of the plaintiff will be reversed on appeal if the defendant's brief demonstrates *prima facie* error and his contentions are supported by the record. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Plaintiff was driving east on the south side of Roosevelt Road just before Ardmore Street, Villa Park, in front of Sharko's restaurant on December 22, 1974, at approximately 5:18 p.m. He was traveling approximately 15 miles per hour on this clear, dark night when he collided with a horse ("Chicago") which was in the road. Plaintiff's windshield was broken and his right front fender was dented by this horse, which then slipped away from the highway for parts unknown.

Defendant rented farm property in Villa Park which consisted of the house in which he lived and a stable where he rented out stalls to various individuals to keep their horses. These individuals then provided the day-to-day care for their horses. The defendant testified that he saw Mark Klein drive up to the stable and enter the barn with another friend. Shortly thereafter defendant heard a commotion outside and upon further investigation saw Klein and his friend returning "Chicago" to his stall. Defendant testified that Klein told him "Chicago" got away from him when he was watering him and that there was no bridle or halter on the horse. At no time did Klein inform the defendant that "Chicago" was injured or that the horse had been struck by a car.

Charles Boyer testified that he owned the horse in question and kept it at the defendant's stables. His son, Bret, testified that he took care of the horse on a daily basis and that he had placed the horse in its stall that afternoon and had locked the stall. Bret further stated that he frequently allowed Mark Klein to ride his horse. Bret testified that the defendant notified him that evening that his horse had been hit by an automobile that evening. Klein testified at trial that he was riding the horse near the barn when the horse threw him and ran through a broken section of the fence. Klein stated that he and his friend tried to get the horse back but were unable to do so and that "Chicago" ran across Roosevelt Road onto Sharko's front lawn. Klein testified that he did not know why he did not tell anyone that "Chicago" had been injured nor did he know why he had changed his original explanation to the defendant that he had been watering the horse when it got away to his testimony at trial that he had been riding the horse.

Defendant testified in rebuttal that his inspection of the fence the next day showed no broken sections. Bret Boyer also testified on rebuttal that he did not believe Klein's story as to how the incident happened.

The trial court's attention was then called to section 1 of "An Act in

relation to domestic animals running at large \* \* \*" (Ill. Rev. Stat. 1975, ch. 8, par. 1) (hereinafter the Act), which provides:

> "\* \* \* it shall be unlawful for any \* \* \* horse \* \* \* to run at large in the State of Illinois: Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large."

The trial court thereafter entered judgment for plaintiff in the amount of $948.99

The sole issue presented is whether the defendant was negligent in the handling of this horse which damaged plaintiff's automobile while running at large.

Prior to 1931, the defendant would have been strictly liable for the factual situation presented here for damages caused by a horse which was kept on his property, escaped and caused damage to property. However, under the present act, a keeper of a horse may not be held liable if he meets a two-part test: (1) If he is able to establish that he used reasonable care in restraining his horse; and (2) That he was without knowledge that the horse was running at large. *O'Gara v. Kane* (1976), 38 Ill. App. 3d 641, 348 N.E.2d 503.·

■■ In the application of these principles to our facts, we find that it was clearly established at trial that the defendant had no knowledge, as a keeper of the horse, that "Chicago" was running at large until the horse had been injured and was returned to the stable. Likewise, there is no evidence that defendant failed to exercise reasonable care in restraining the horse. Defendant had observed Mark Klein and his unidentified friend drive up to the stable and did not believe this was unusual because, as Bret Boyer testified, Bret frequently allowed Klein to ride his horse. Klein's testimony as to the break in the fence is the only evidence admitted at trial which could possibly demonstrate that the defendant failed to exercise reasonable care. Klein's credibility on this point, however, is in serious doubt for several reasons: (1) The way he changed his story at trial from what he admittedly had told the defendant had occurred on the night in question; (2) That he was unable even to identify the friend who had accompanied him to the stable that night; and (3) That Bret Boyer, the person who admittedly allowed Klein to ride his horse, stated that he did not even believe Klein's story. In light of these variances and discrepancies in Klein's testimony, as well as castigations upon his believability, we have determined that Mark Klein's testimony lacked credibility. (*People v. Thruman* (1977), 52 Ill. App. 3d 13, 367 N.E.2d 379.) In addition, there is no other evidence that the defendant failed to

exercise reasonable care or that he had knowledge that the horse, "Chicago," was at large.

■■ Generally the findings of the trial court in matters of evidence and credibility will not be disturbed on appeal unless the evidence is clearly contrary to the manifest weight of the evidence. (*Yale Development Co. v. Texaco, Inc.* (1977), 51 Ill. App. 3d 616, 366 N.E.2d 892.) However, the trial court's determination that the defendant failed to exercise reasonable care under this Act as a keeper of the horse and its further findings that the defendant had notice of the break in the fence and of Mark Klein's unauthorized use of this horse were clearly against the manifest weight of the evidence, and we reverse. (*Yale Development Co. v. Texaco, Inc.* (1977), 51 Ill. App. 3d 616.) The only evidence that the defendant was negligent and failed to use reasonable care and keep the horse from running at large was the tenuous testimony of Mark Klein that the horse threw him and ran through a broken section of the fence. The defendant, as the lessor of the property, cannot be held liable to plaintiff on a negligence theory. *O'Gara v. Kane* (1976), 38 Ill. App. 3d 641, 348 N.E.2d 503.

Accordingly, the judgment of the circuit court of Du Page County for plaintiff in the amount of $948.99 plus costs is reversed as to the defendant, William R. Kern. In addition, because of the technical deficiencies in the trial court's order noted previously as to the failure of the trial court's judgment properly to reflect against which defendants it was entered, we direct the trial court on remand pursuant to our appellate and supervisory powers (Supreme Court Rule 366(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 366(a))) to enter proper judgments pursuant to the views expressed herein. *Department of Public Works & Buildings v. Gieseking* (1969), 108 Ill. App. 2d 105.

The judgment of the trial court is reversed in part as to defendant, William R. Kern, and the cause is remanded with directions.

Reversed in part; remanded with directions.

SEIDENFELD, P. J., and WOODWARD, J., concur.