JACK D. DAVIS, Plaintiff-Appellant and Cross-Appellee, v. KARL J. KURTZ, Defendant-Appellee and Cross-Appellant.

Third District   No. 3—87—0295

Opinion filed January 27, 1988.

Ronald S. Ellis, of Troha, Troha & Bednarek, Ltd., of Joliet (Theodore J. Bednarek, of counsel), for appellant.

Van Der Aa, of Lanting & Paarlberg, Ltd., of South Holland (James Lanting, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff brought this action seeking dissolution of an alleged oral partnership, an accounting, judicial sale of a land trust, and injunctive relief. The trial court determined that no partnership was ever formed, but found that the parties jointly owned the real estate in the land trust. The court severed the parties' joint interests in the land, set the value of the plaintiff's interest, and gave the defendant the option of purchasing the plaintiff's interest. Finally, the court provided that in the event that the defendant elected not to purchase the plaintiff's interest, the property would be sold at a judicial sale and the proceeds would be divided. The plaintiff filed the instant appeal. We affirm.

Jack Davis and Karl Kurtz met and became friends in 1976. At that time, Kurtz was a licensed funeral director and embalmer. The

parties orally agreed to purchase real estate and form a funeral home business corporation, with the intent that they would be equal partners in the venture. In 1977, they located a suitable piece of property with a farmhouse in New Lenox, Illinois, which they purchased in the name of Davkurt, Inc., the proposed business corporation. Immediately after the purchase, and at the request of the New Lenox State Bank, the parties placed the property in a land trust. The trust agreement provided that each party owned an undivided one-half of the beneficial interest in the property. Davis and Kurtz each contributed $15,000 for renovations and improvements to be performed on the premises. Davis participated in the initial renovations and intended to act as the funeral home's business manager once the business was established.

Later in 1977, the parties' attorney informed them that Davis could not participate in the intended corporation because State law prohibited an unlicensed individual from holding any interest in a funeral home business corporation. (Ill. Rev. Stat. 1977, ch. 111, par. 2801 *et seq.*) Therefore, Davkurt, Inc., the intended corporation, was never formed and the property remained in the land trust. Davis testified that upon learning of the State law prohibiting his active participation in the business, he reduced his level of participation but remained a financial and business consultant, as well as a partner in the real estate through his 50% beneficial interest in the land trust. Kurtz disputes this characterization, however. He maintains that Davis withdrew and disassociated himself from the venture, performing no further services to benefit the venture except to give some unsolicited advice.

The parties agree that from 1977 through the time of the trial in this matter, Kurtz actively operated the funeral home business. He made all of the mortgage, utility, insurance, and tax payments. Furthermore, Kurtz made approximately $350,000 in permanent improvements to the property. Specifically, a chapel and a morgue were constructed, the house was extensively remodeled and the second floor was renovated so the Kurtzes could reside there, the parking lot was paved, and the grounds were landscaped. Davis stated that some of the improvements were made over his objections and after his requests that Kurtz buy his interest in the business. Davis objected to the conversion of the two second-floor apartments into a single residence for Kurtz and his wife, but he loaned Kurtz $35,000 to complete the project. Kurtz repaid the loan in full.

In 1984, after Illinois law was amended and unlicensed individuals were permitted to own an interest in a funeral home business, Davis' attorney sent a letter to Kurtz announcing that Davis had elected to

dissolve the partnership in the real estate business. The letter contained Davis' offer to buy Kurtz' 50% interest or to sell his 50% interest to Kurtz. Kurtz did not accept the offer.

In April 1985, Davis filed suit against Kurtz. In the complaint he alleged that he and Kurtz entered into an oral partnership agreement to acquire and improve the piece of real estate in New Lenox and to develop a funeral home business. The complaint further alleged that the partnership's two assets were the land trust and the funeral home business. He requested the court to provide certain temporary relief pending the outcome of the litigation, dissolve the partnership, order an accounting of the partnership assets, and order a judicial sale of the land trust. Kurtz denied the existence of a partnership and alternatively asserted that the partnership was dissolved in 1977 when Davis withdrew from the venture.

At the bench trial in this matter, Davis attempted to prove he and Kurtz were partners in D & K Partnership, which he described as a real estate partnership in the land and the buildings they purchased in New Lenox, but he abandoned his earlier claim for an interest in the funeral home business. Davis testified that he received no profits from the partnership, nor did he demand or receive an accounting. Kurtz admitted that he filed several partnership tax returns for D & K Partnership, but stated that he provided incorrect information on the returns and that D & K Partnership did not exist. Similarly, Kurtz admitted that on several of his personal financial statements he disclosed an interest in D & K Partnership, but claimed at trial that there was no D & K Partnership.

The real estate and improvements were appraised prior to trial and the appraisal report was admitted into evidence by agreement. According to the report, the market value of the entire property was $325,000, 43% of which was attributable to the land and 57% of which was attributable to the improvements.

After hearing all the evidence, the court found that no real estate partnership or funeral home business partnership was ever formed, but that Davis and Kurtz jointly owned the real estate. The court accepted the values set out in the appraisal report and further found that the outstanding mortgage indebtedness on the property was $102,000. The trial court noted that the improvements located on the property when it was purchased were of limited value and that the permanent improvements made since 1977 were paid for exclusively by Kurtz. Finally, the court found that the equitable principles of unjust enrichment and restitution applied. In accordance with those findings, the court severed the parties' joint interest in the land trust and provided that if

he elected to do so, Kurtz could purchase Davis' interest in the property for $47,945, which, after deducting the outstanding mortgage, represents one-half of the proportionate value of the unimproved land. Alternatively, if Kurtz was unwilling to elect this remedy, the court ordered the property to be sold at a judicial sale, and after deducting costs and the outstanding mortgage, Davis was to be paid half of the proceeds which were attributable to the proportionate value of the unimproved land. The remainder of the proceeds was to be paid to Kurtz.

On appeal to this court, Davis raises four issues. First, he claims the court erred by granting Kurtz the option to purchase his interest in the property because the only proper remedy is a judicial sale of all of the beneficial interests in the land trust. Davis further asserts that the court-ordered remedy is inequitable, destroys his legal right to receive 50% of the value of the land trust, and erroneously reduces his interest in the trust to a debt. (*Caudill v. Beil* (1984), 127 Ill. App. 3d 847.) We disagree.

An extensive review of Illinois law revealed no cases which addressed this precise issue. Therefore, we must turn to general equitable principles to resolve the dispute presented here. Equity courts are not bound by rigid formulas governing specific actions; rather, they are more concerned with balancing the hardships and equities presented by each unique set of circumstances. It is well established that courts of equity have great flexibility in determining appropriate relief in actions before them and may shape remedies to meet the demands of justice in each case, however peculiar. (*Shatz v. Paul* (1955), 7 Ill. App. 2d 223, 234.) The trial judge in this matter thoroughly considered the evidence presented, and based on his evaluation of the circumstances, he crafted an equitable remedy to fit this unique situation. For the reasons set out below, we find that in ordering a judicial sale as an alternative to a buyout of the plaintiff's interest, the trial judge here engaged in a proper exercise of his judicial discretion.

■ We note initially that in 1984 when Davis' attorney communicated to Kurtz that Davis desired to dissolve the alleged partnership, Davis offered to sell his interest to Kurtz. In his complaint filed in 1985, Davis requested the court to dissolve the alleged partnership and dispose of his interest in the land trust through a judicial sale. The trial court ordered a judicial sale, but made the order contingent on Kurtz' election to exercise his option to purchase Davis' interest for the sum established by the court. Kurtz argues, and we agree, that the court's order was not an abuse of discretion because the relief requested by Davis—a forced judicial sale—would be of no greater benefit to Davis than the relief ordered and would have worked a great

hardship on Kurtz.

The property in the land trust has served as a home for Kurtz and his family for several years prior to the litigation and the funeral home business maintained on the premises has been Kurtz' sole livelihood since it became operational. By affording Kurtz the opportunity to purchase Davis' interest, the court made it possible for Kurtz to remain in his home and continue operating his funeral home business, while a judicial sale could have ousted the Kurtzes from their home and forced Kurtz to seek alternative employment.

Furthermore, the property involved in this case was modified for a very special and limited use. The large Victorian farmhouse was converted into a funeral home complete with a chapel, a morgue, and an elevator for moving caskets. The property was rezoned and a large paved parking lot was built to accommodate numerous vehicles. Accordingly, it is unlikely that a forced judicial sale would draw many reasonable offers to purchase property which is suited primarily for this particularly unique and specialized business.

Finally, Davis has not shown that he was prejudiced in any way by the remedy ordered by the court. If Kurtz elects to purchase his interest, Davis will receive $47,945, which according to the stipulated appraisal represents half of the total value of the unimproved land. If the property is sold at a judicial sale, after costs and expenses are deducted, Davis will receive half of the proportion of the sale price which is attributable to the unimproved land. As there is nothing to suggest that a judicial sale would yield a sale price substantially higher than the appraised fair market value, we have no reason to believe that allowing Kurtz to purchase Davis' interest for a sum based on the appraisal value will result in any prejudice.

■■ Davis calls our attention to *Caudill v. Beil* (1984), 127 Ill. App. 3d 847, and argues that it dictates a different result. We disagree. In *Caudill*, the trial court determined that the plaintiff was the legal and equitable owner of certain real estate, subject to resulting trusts in favor of the defendant, who supplied a portion of the down payment. The court reduced the resulting trusts to monetary amounts which it ordered the plaintiff to pay. The appellate court held that because a resulting trust is an interest in property, not a debt, the lower court erred in reducing the defendant's share in the properties to a sum of money. *Caudill* is clearly distinguishable from the case at bar and does not dictate the result Davis seeks. The rule involving resulting trusts discussed in *Caudill* is inapplicable here, where the parties own beneficial interests in a land trust, because such beneficial interests are considered personal rather than real property. (*In re Estate of Alpert*

(1983), 95 Ill. 2d 377, 382.) Further, the trial court here did not reduce Davis' interest in the trust to a debt which it ordered Kurtz to pay; rather, the court ordered the sale of property and gave Kurtz the option to purchase Davis' interest.

Based on the foregoing, we find that the relief awarded by the trial court was warranted and entirely appropriate under the circumstances of this case. The court carefully considered the unique nature of the property and the relationship of the parties to the property, and in the exercise of an equity court's broad discretion, fashioned a remedy to meet the demands of this situation. We find no abuse of discretion.

■ Davis next argues that the court erred when it set the value of his interest in the land trust at $47,945. Specifically, he contends that because the trust agreement provides that he owns 50% of the beneficial interest in the trust, he is entitled to receive 50% of total value of the land and the improvements. Davis also stresses that during the pleading stage, the trial court struck Kurtz' affirmative defense of unjust enrichment, but in its order made a specific finding that the equitable principles of unjust enrichment and restitution applied and that it would be inequitable to allow Davis to receive the benefit of Kurtz' permanent improvements to the property.

The value set by the trial court here was proper. The record does not reveal the reason the court struck the affirmative defense of unjust enrichment, but that is not relevant to our resolution of this issue. That unjust enrichment was struck as an affirmative defense in no way precluded the court from later applying the equitable principle in reaching a just result based on the circumstances in this case. In an effort to show that it would be unjust to allow Davis to benefit from the improvements, Kurtz put forth evidence which established that he was solely responsible for the improvements to the property and that their cost exceeded the value of the property. In view of the evidence, we find the court properly applied the principle of unjust enrichment. Davis asserts that presentation of the above evidence violated the parol evidence rule because it contradicted the clear terms of the land trust agreement. The parol evidence rule, which states that evidence of prior or contemporaneous oral agreements is not admissible to vary the terms of an integrated writing which is unambiguous on its face, is not applicable here. The agreement at issue was an oral one to establish a funeral home corporation and to become 50-50 partners in the funeral home business. The parties readily admit that the land trust agreement, which provided that each party owned a 50% interest in the trust, did not incorporate their entire agreement and that it was

merely an interim step in their plan to form a funeral home corporation. As the agreement between the parties was never reduced to a writing, the parol evidence rule cannot be invoked to preclude admission of parol evidence. Accordingly, evidence of the cost and value of Kurtz' improvements was properly admitted and was appropriately considered by the court in valuing Davis' interest.

Upon consideration of all of the evidence, the trial court determined that after deducting the amount of the outstanding mortgage, Davis was entitled to one-half of the value of the unimproved land. Based on the stipulated appraisal, the court found Davis' interest to be worth $47,945. We agree with the court's valuation and find it is equitable under the circumstances, and therefore we need not alter it on review.

■ Davis next maintains that the court's finding that no real estate partnership was formed is against the manifest weight of the evidence. Again, we disagree. It is established that the existence of a partnership is ordinarily a question to be determined by the fact finder from all the facts and circumstances presented and its decision will not be disturbed on review unless it is manifestly against the weight of the evidence. (*Peterson v. Prince* (1982), 102 Ill. App. 3d 220, 224.) Our supreme court has stated that the requisites of a partnership are that the parties must have joined together to carry on a venture for their common benefit, each contributing services or property, and having a community interest in profits received. (*Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 299.) In *Rizzo*, the court also set forth several factors properly considered in determining the existence of a partnership, noting that the essential test is the sharing of profits. 3 Ill. 2d at 300.

The trial court found that the essential elements of a partnership were lacking, and specifically, that there was no organization of business for profit. The record amply supports the trial court's finding. After learning that the intended funeral home partnership could not be formed, Davis' involvement in the venture was limited to occasionally offering Kurtz financial advice. He admitted at trial that he did not receive any profits from the alleged partnership and was unable to delineate any essential terms of the business relationship. The record indicates Davis in no way participated in the management or control of the real estate or the business Kurtz operated thereon.

■ Davis primarily argues that we should overturn the court's finding because Kurtz filed partnership income tax returns and financial statements which made reference to the D & K real estate partnership. He contends that because Kurtz affirmed the existence of the partnership under oath on those documents, he was estopped from de-

nying its existence at trial. While this is the correct rule if a party affirms a set of facts under oath in pleadings or at trial (*Finley v. Kesling* (1982), 105 Ill. App. 3d 1), Davis cites no authority for extending this rule to affirmations on tax forms or financial statements. Accordingly, we find that the court did not err when it found that Kurtz was not estopped from denying the existence of a real estate partnership at trial. Furthermore, based on our review of the record, we find that the trial court's determination that no partnership was created is not manifestly against the weight of the evidence.

■ The final issue presented is whether the court erred in denying Davis' motion for sanctions for discovery violations. In response to Davis' pretrial request for document production, Kurtz supplied a 1977 personal financial statement which does not refer to the D & K partnership. Kurtz testified at his deposition and at trial that after searching his files, he located only the 1977 statement and that he had filed no others. However, Davis issued a subpoena to the New Lenox State Bank and received Kurtz' financial statements for the years 1983 through 1985. Those statements referred to Kurtz' interest in the D & K partnership. At trial, Kurtz explained that in 1977, he prepared one set of financial records which he presented to the New Lenox State Bank for preparation of his personal financial statement. Thereafter, Kurtz testified, the bank used the 1977 figures to prepare his financial statements, which he reviewed and signed at the bank. The court noted that the three later financial statements were not in Kurtz' possession but were in the bank's custody and therefore found that Kurtz did not violate the rules of discovery by failing to produce the documents. Accordingly, the court denied Davis' motion for sanctions.

It is a general rule that the decision whether to impose sanctions against a party for noncompliance with discovery rules is within the discretion of the trial court. (*City of Chicago ex rel. Cohen v. Keane* (1982), 105 Ill. App. 3d 298, 305.) In the case before us, the trial court determined that Kurtz complied as fully as possible with the request to produce documents. We believe that the trial court did not abuse its discretion in ruling as it did.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and SCOTT, J., concur.