LARRY D. ESTES *et al.*, Plaintiffs-Appellants, v. JOHN MADDRELL, Defendant-Appellee.

Third District   No. 3—90—0183

Opinion filed January 31, 1991.—Rehearing denied March 11, 1991.

Goldfine & Bowles, P.C., of Peoria (William K. Brown, of counsel), for appellants.

Nicholas J. Bertschy and Roger R. Clayton, both of Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

Plaintiff Larry D. Estes (Larry), while driving a motor vehicle, struck a bull owned by defendant John Maddrell. Larry and his father, Larry E. Estes (Mr. Estes), filed suit to recover damages for personal injuries and medical costs resulting from the accident. The defendant filed a motion for summary judgment which was granted by the trial court. Plaintiffs appeal. We reverse.

On October 4, 1986, Larry was operating· a motor vehicle that struck a bull that had wandered onto the roadway. Larry allegedly sustained personal injuries as a result of the accident. Since Larry was a minor at the time of the accident, Mr. Estes allegedly made payment for medical services rendered to his son.

On September 14, 1988, the plaintiffs brought suit against the defendant, alleging that he owned the bull that was involved in the accident and that he failed to use reasonable care to prevent his bull from running at large in violation of the Illinois Domestic Animals Running at Large Act (Act) (Ill. Rev. Stat. 1989, ch. 8, par. 1 et seq.). Larry's claims are predicated upon the personal injuries he allegedly sustained as a result of the accident. Mr. Estes' claims are derivative claims for the medical expenses of his son based upon provisions of the family expense act (Ill. Rev. Stat. 1989, ch. 40, par. 1015).

In his answer to the complaint, the defendant admits that on October 4, 1986, on a public highway within Warren County, Illinois, there was an accident whereby an Angus bull owned by the defendant was struck by a motor vehicle. The defendant denies liability for the accident.

The defendant moved for summary judgment. Attached to the defendant's motion was the deposition testimony of the defendant and an individual named Ron Byers. The discovery deposition of the defendant reveals that the defendant was not personally aware that

the bull had gotten loose until after the accident when Ron Byers called him to ask what he wanted done with the bull.

The discovery deposition of Ron Byers reveals that Mr. Byers had, at the time of the occurrence, an agreement with the defendant known as the cow-calf operation agreement. This written agreement was dated in 1978 but was renewed on an automatic, annual basis. This agreement provides that Mr. Byers is to take care of the pasture land, the facilities, and the operations as to the care and feeding of the animals. The bull involved in the accident had been living on the defendant's property for about three months prior to the accident. On the day of the accident, Mr. Byers came upon the accident scene and found the bull in a ditch. Mr. Byers called the defendant in order to get a decision as to what to do with the bull. As far as Mr. Byers knew, that was the first time the defendant was made aware of the fact that the bull had been running loose.

According to Mr. Byers, the bull had escaped on two occasions prior to the accident. After the bull was recaptured during those times, Mr. Byers examined the fence surrounding the pasture where the bull was kept. The fence was always in good shape and had not been damaged. It was also determined that the bull had not escaped through an open gate. A few days prior to the accident, Mr. Byers was corralling the animal when he observed it jump a 52-inch fence and escape. Mr. Byers was unable to capture the animal again prior to the accident.

The cow-calf operation agreement essentially indicates that the defendant is to provide the land, animals and certain other financial resources while Mr. Byers is to provide the labor for the operation. The agreement calls for a sale of the calf crop each fall, deduction of sales and trucking expenses and division of the profits at a rate of 75% for the defendant and 25% for Mr. Byers. The agreement indicates that the operation is ongoing unless there is a 90-day notice of termination of the agreement prior to August 1 of a year of termination.

After the filing of the defendant's motion for summary judgment, the plaintiffs filed both a motion for leave to file amendments and a motion to substitute plaintiffs as Larry had reached the age of majority. Both motions were allowed.

The amendment to the complaint added the allegations that Mr. Byers and the defendant were partners in the cow-calf operation and that Mr. Byers had actual notice that the bull involved in the accident was running at large. Plaintiffs claimed that by virtue of the partnership arrangement, Mr. Byers' knowledge was imputed to the defendant.

The court then conducted a hearing and considered the motion for summary judgment and the responses thereto as to all counts of the complaint, including the amendments. Thereafter, the court entered an order granting the defendant's motion. The plaintiffs appeal, contending that the trial court improperly granted the defendant's motion for summary judgment.

The Illinois Domestic Animals Running at Large Act provides:

> "No person or owner of livestock shall allow livestock to run at large in the State of Illinois. All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large." Ill. Rev. Stat. 1989, ch. 8, par. 1.

■ Prior to 1931, a defendant was strictly liable for damages caused by an animal which was kept on his property, escaped and caused damage to a person and/or his or her property. (*Wakefield v. Kern* (1978), 58 Ill. App. 3d 837, 840, 374 N.E.2d 1074, 1077.) The Act was amended in 1931 and, under the present act, an owner or keeper of livestock will not be held liable if he meets a two-part test: (1) if he is able to establish that he used reasonable care in restraining his livestock; and (2) that he did not have knowledge that the animal was running at large. *Wakefield*, 58 Ill. App. 3d at 840, 374 N.E.2d at 1077.

It is undisputed that the defendant-owner did not have actual knowledge that the bull was running at large. This would seemingly afford him protection under the statute. The plaintiffs allege, however, that by virtue of the cow-calf agreement, the defendant and Mr. Byers were partners. The plaintiffs point to the relationship between the defendant and Mr. Byers, a relationship predicated upon a written agreement, whereby the defendant brought land, livestock and financial resources to the relationship and Mr. Byers brought labor and farm management expertise to the relationship. Mr. Byers ran the operation, at least on a day-to-day basis. Profits from the operation were divided between the two men. The plaintiffs further assert that as partners, Mr. Byers' knowledge that the bull was loose was imputed to the defendant.

■ Plaintiff's allegations of the partnership business arrangement is an attempt to broaden liability under the Act. The defendant is correct that the Domestic Animals Running at Large Act is in derogation of the common law and must be strictly construed. However, the cases cited by the defendant, *Smith v. Gleason* (1987), 152 Ill. App. 3d 346, 504 N.E.2d 240, and *Heyen v. Willis* (1968), 94 Ill. App. 2d 290, 236 N.E.2d 580, are distinguishable from the instant case as they are landlord/tenant cases. The defendants in those cases had nothing to do with the livestock involved in accidents, other than to lease real property to their owners. Here, Mr. Byers and the defendant both shared a vested interest in the welfare of the animals. It cannot reasonably be argued that the defendant was a mere landlord to Mr. Byers.

*Moreno v. Beckwith* (1967), 77 Ill. App. 2d 443, 222 N.E.2d 918, and *Farrell v. Crawford* (1921), 222 Ill. App. 499, also cited by the defendant, are also distinguishable from the instant case. Those cases concern liability under the Act of individuals engaged in bailor/bailee relationships. This is not a bailor/bailee relationship, and defendant's contention that this is exactly that type of a relationship is rejected.

In the instant case, there is one man who owns the livestock while another man manages the livestock. A written agreement indicates that the two will split the profits at the end of the year. The man who manages the livestock knows, with certainty, that a bull has escaped. A few days later the animal is involved in an accident with a motor vehicle and a young man is injured. The defense is that although the manager knew, the owner did not, and, accordingly, there is no liability under the Act.

■ The intent of the legislature in enacting this law was to encourage owners of livestock to restrain their animals so as to prevent accidents. Those livestock owners that allow their animals to roam free will be liable to others for the damage the animals cause. Those that are not aware that their animals are running free *and* can demonstrate that they used reasonable control in restraining their animals will not be held liable.

The Act seeks to balance interests; it seeks to make livestock owners liable if they aren't reasonable, but not strictly or absolutely liable. The business relationship between Dr. Maddrell and Mr. Byers clearly affects liability under the Act. That relationship has many of the indicia of a partnership, all of which are facts which must be construed against the movant in a motion for summary judgment.

■ The granting of summary judgment is a drastic remedy and means of disposing of litigation and should be granted only when the

right of the movant thereto is clear and free from doubt. (*Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 395 N.E.2d 119.) The existence of a partnership is a question to be determined by the fact finder from all the facts and circumstances presented. (*Davis v. Kurtz* (1988), 165 Ill. App. 3d 417, 424, 518 N.E.2d 1297, 1301.) As our supreme court stated in *Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 299, 120 N.E.2d 546, 551, "[t]he requisites of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits." The court set forth several factors properly considered in determining the existence of a partnership, noting that the essential test is the sharing of profits. (*Rizzo*, 3 Ill. 2d at 299-300, 120 N.E.2d at 551.) Accordingly, the decision of the circuit court of Knox County granting summary judgment is reversed and this matter is remanded.

Reversed and remanded.

BARRY and McCUSKEY, JJ., concur.