JAMES NEVIOUS, Plaintiff-Appellant, v. KEITH BAUER *et al.*, Defendants-Appellees.

Third District    No. 3—95—0628

Opinion filed June 20, 1996.

HOLDRIDGE, P.J., specially concurring.

Mark C. Murnane (argued), of Anesi, Ozmon & Rodin, Ltd., of Chicago, for appellant.

Daniel E. Compton (argued), of Brittain & Ketcham, P.C., of Elgin, for appellee.

JUSTICE MICHELA delivered the opinion of the court:

Plaintiff-appellant, James Nevious (plaintiff), brought an action against defendants-appellees, Keith Bauer and Marsha Bauer (defendants), under section 1 of the Illinois Domestic Animals Running At Large Act (the Act) (510 ILCS 55/1 *et seq.* (West 1994)) for injuries sustained in a vehicular collision with defendants' bull. At the close of evidence, the trial court directed a verdict in defendants' favor. Plaintiff appeals, contending the trial court misconstrued the burden of proof requirements under the Act, consequently erring in directing the verdict and abusing its discretion by refusing proffered prior-escape evidence. We reverse and remand with directions.

On the night of February 12, 1992, plaintiff sustained injuries when his automobile collided with a 2,000-pound black Angus bull, now deceased, which was standing in the middle of Herscher Blacktop Road in Kankakee County. Apparently, the bull had escaped from the feedlot area on defendants' farm by leaning into and then jumping over a fence that was four to five feet in height. Discovery revealed the bull had previously escaped from the pasture area on defendants' farm. On two prior occasions, the bull had escaped

underneath the pasture area fence where the fence met a creek. The pasture area fence was approximately four feet high.

Prior to trial, defendants filed a motion *in limine* requesting the trial court to bar reference to the previous escapes as being dissimilar to the escape in question. Counsel for plaintiff argued the substantial similarity in height between the two fences was sufficient to allow the previous escape evidence. The trial court disagreed, finding that plaintiff could not establish substantial similarity of circumstances between the previous escapes and the current escape which would have put the defendants on notice that the bull would escape from the feedlot area. As a result, the trial court granted the motion.

At trial, defendant Keith Bauer testified he owned the bull and that the bull had escaped by leaning against the nonelectrified fence and jumping out. He further testified he was responsible for controlling the bull and for ensuring that the bull would not escape. According to Mr. Bauer, the feedlot fence was the only fence on the farm that was not electrified. Nothing prevented Mr. Bauer from running electricity through the feedlot fence.

The cattle panels enclosing the feedlot were approximately four to five feet tall and were wired to steel posts with 12-gauge wire. Posts holding the cattle panels were pounded into the ground in the area where the bull jumped the fence. Other posts were cemented to the ground. Mr. Bauer testified that a startled bull could charge, jump four feet and travel up to 20 miles per hour. Mr. Bauer was aware that the local Farm and Fleet store sold taller and heavier cattle panels.

There was hay outside the fence on the evening of the escape. Mr. Bauer admitted that the bull could smell hay and that it ate hay daily. Mr. Bauer also admitted that a taller and stronger feedlot fence was needed when storing hay within seven feet outside the feedlot. However, the trial court sustained objections as speculative that the bull was hungry and attracted to the hay outside the feedlot on the evening of the collision.

Mr. Bauer testified the bull had not escaped from the feedlot prior to the evening of the collision. He was not aware of any practice or custom in Kankakee County regarding construction of feedlots or the use of electricity in feedlots. He had experienced no prior problems with the cattle panels before the evening of the collision. He testified he was unaware the bull had escaped until after the accident.

After plaintiff rested his case, defendants moved for a directed verdict. Defendants argued that plaintiff failed to prove that defendants lacked due care in restraining the bull. Plaintiff

maintained that defendants had the burden of proving exercise of due care and lack of knowledge of the escape. Plaintiff further argued that, in any event, due care was a question of fact for the jury to resolve. The trial court disagreed, stating that defendants only had the burden of going forward on the issue of knowledge. Mr. Bauer already testified to lack of knowledge of the bull's escape. Therefore, the trial court denied the motion, stating that defendants only had to establish lack of knowledge as to Marsha Bauer in their case in chief.

Mr. Bauer testified that the bull had visited the feedlot regularly since 1990 without incident. He further testified that the bull had a gentle nature and had never before done anything to the feedlot fence. Marsha Bauer then testified she had no knowledge of the bull's escape prior to the accident. Defendants rested and then renewed their motion for a directed verdict. The trial court stated that it was plaintiff's burden to prove whether the fence was reasonable and that the burden of proof always stays with the plaintiff. The trial court then granted the motion for a directed verdict because plaintiff failed to introduce any evidence regarding defendants' lack of due care in restraining the bull. The trial court denied plaintiff's post-trial motion. Plaintiff now appeals.

On appeal, plaintiff argues the trial court misconstrued the burden of proof provisions of the Act and thus erred in directing a verdict for defendants. Plaintiff claims the plain reading of the Act places the burden on the defendants to establish exercise of due care as a defense to an alleged violation of the Act. Defendants respond that case law has interpreted the Act as placing the burden on plaintiff to establish that defendants failed to exercise due care. Consequently, since plaintiff failed to introduce any evidence of lack of due care, defendants assert the trial court correctly directed the verdict. The parties also dispute the admissibility of the prior-escape evidence.

■ Turning to the first issue regarding burden of proof, section 1 of the Act provides:

"No person or owner of livestock shall allow livestock to run at large in the State of Illinois. All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for such damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large." 510 ILCS 55/1 (West 1994).

Historically, the Act was enacted in 1895 and imposed strict liability on an owner or keeper for damages caused by specified domestic animals that ran at large. *Zears v. Davison*, 154 Ill. App. 3d 408, 506 N.E.2d 1041 (1987). The Act was amended in 1931 to provide "innocent owners" with relief from the harsh consequences of strict liability so long as they acted with due care in restraining the animal and did not know of its escape. *Estes v. Maddrell*, 208 Ill. App. 3d 813, 566 N.E.2d 916 (1991). The Act seeks to balance interests; it seeks to make the livestock owners liable if they are not reasonable, but not strictly or absolutely liable. *Estes*, 208 Ill. App. 3d at 817, 566 N.E.2d at 919.

With this brief history in mind, we address the question of which party has the burden of proving defendants' due care. According to plaintiff, he must only establish a *prima facie* case consisting of proof that damage was caused by an owner's livestock running at large. Once established, the burden of proof shifts to defendants to establish lack of knowledge and exercise of due care as a complete defense. According to defendants, once the *prima facie* case has been met, the burden of proceeding switches to them to introduce evidence of due care and lack of knowledge. Once accomplished, the burden of proceeding switches back to plaintiff and he must prove defendants' lack of due care and lack of knowledge. Plaintiff's interpretation creates an affirmative defense that must be pled and proved. Defendants' interpretation creates a rebuttable presumption of liability that is totally negated by any evidence of due care and lack of knowledge. Our inquiry is one of legislative intent.

■ Regarding legislative intent, defendants point out the Act was amended in 1986. See Pub. Act 84—28, § 1, eff. January 1, 1986 (amending Ill. Rev. Stat. 1985, ch. 8, par. 1 *et seq.* (now 510 ILCS 55/1 *et seq.* (West 1994))). Defendants argue that the reason this amendment date is important is not because of the language of the amendment, but because the legislature did not alter the Act to change its preexisting judicial interpretation. The legislature is presumed to know the judicial construction that a statute has been given and, by reenactment, is assumed to have intended for the new statute to have the same effect. *Williams v. Crickman*, 81 Ill. 2d 105, 111, 405 N.E.2d 799, 802 (1980).

Defendants contend that any judicial construction of such statutory language that survives an amendment must be considered as an accurate construction of the language by this court. In this regard, defendants cite *Guay v. Neel*, 340 Ill. App. 111, 91 N.E.2d 151 (1950), as the only authority in existence on the issue prior to the Act's 1986 amendment. In *Guay*, the court stated: "The burden was on [the]

plaintiff to prove her case by a preponderance of the evidence. \*\*\* Having made out the prima facie case, the burden of proceeding moved to the defendant. The burden of proof remained, however, on the plaintiff." *Guay*, 340 Ill. App. at 118, 91 N.E.2d at 154. Defendants contend that by not amending the burden of proof requirements under the Act in 1986, the legislature tacitly accepted the *Guay* interpretation.

Plaintiff acknowledges the proposition for which *Guay* is cited. However, plaintiff argues that *Johnson v. Sleaford*, 39 Ill. App. 2d 228, 188 N.E.2d 230 (1963), a pre-1986 amendment decision, reaches the opposite conclusion. In *Johnson*, the court determined that the burden of proof for establishing due care and lack of knowledge switched to the defendant after plaintiff made out his *prima facie* case. *Johnson*, 39 Ill. App. 2d at 235, 188 N.E.2d at 233; see also *Fugett v. Murray*, 311 Ill. App. 323, 35 N.E.2d 946 (1941) (another pre-1986 amendment decision where the court placed the burden of proof on the defendant). Thus, according to *Williams v. Crickman*, we "[shall] not assume that the legislature has approved an interpretation which is obviously conflicting." *Williams*, 81 Ill. 2d at 112, 405 N.E.2d at 802.

■ If defendants are correct in asserting that the burden of proof always remains with the plaintiff, then, under the Act, plaintiff would have to prove lack of due care and lack of knowledge. This interpretation of the Act is implausible since plaintiff is logically precluded from proving the negative, here, lack of knowledge on defendants' part. The better interpretation, and in our opinion the plain reading of the Act, warrants placing the burden of proof of exercise of due care and lack of knowledge on the defendants. Indeed, as the court stated in *Fugett v. Murray*, "[t]he defendant claims the benefit of the proviso. The proof to be established under the proviso was within the knowledge of the defendant and not the plaintiff. The burden \*\*\* [should be] on the defendant." *Fugett v. Murray*, 311 Ill. App. 323, 328, 35 N.E.2d 946, 949 (1941). Accordingly, we hold that once plaintiff has established his case in chief, the burden of proof shifts to the defendants to establish both the exercise of due care in restraining the livestock and lack of knowledge it had escaped. Such interpretation, we believe, comports to the legislative intent of balancing interests. See *Estes v. Maddrell*, 208 Ill. App. 3d 813, 817, 566 N.E.2d 916, 919 (1991).

■ Defendants argue that even if we hold the trial court erred in its interpretation of the Act, the trial court still properly directed the verdict since plaintiff failed to introduce any evidence in contradiction of the defendants' testimony. We disagree. Even though defen-

dant Keith Bauer was the only witness who testified to the nature of the bull and the adequacy of the restraints placed upon it, we believe it was a question of fact as to whether defendants acted reasonably under the circumstances. See generally *Johnson v. Sleaford*, 39 Ill. App. 2d 228, 188 N.E.2d 230 (1963); *Fugett v. Murray*, 311 Ill. App. 323, 35 N.E.2d 946 (1941). Mr. Bauer testified that the feedlot fence was nonelectrified, whereas other fences on the farm were electrified; the cattle panels were four to five feet in height, whereas other more sturdy cattle panels were available for purchase; and the bull was gentle in nature even though it had the ability to charge and jump four feet. The fact that Mr. Bauer's testimony went unrebutted is irrelevant for our purposes. We need only look to the sufficiency of the testimony presented, not to who presented it.

Defendants argue that the instant case differs from *Johnson* and *Fugett* because, unlike those cases, no rebuttal evidence was presented to contradict Mr. Bauer's testimony. However, no additional evidence was necessary. Mr. Bauer's own testimony created the question of fact. The presentation of additional evidence might have been helpful to plaintiff's case, but was not necessary to survive a motion for a directed verdict. Accordingly, we further hold the trial court erred in directing a verdict in defendants' favor. Thus, we remand for a new trial.

Our inquiry would normally be complete at this point. However, plaintiff asks us to reconsider the trial court's ruling on the denial of the previous-escape evidence. We deem it necessary to address this issue in order to aid the trial court on remand. The trial court excluded the previous-escape evidence because plaintiff could not establish a foundation of substantial similarity between the prior escapes and the present escape. Plaintiff argues that such foundation is unnecessary when offering the proffered evidence to prove defendants' notice of a general hazard. We agree.

■ Evidence of prior occurrences is admissible at trial for two purposes: (1) to show the existence of a particular danger or hazard; or (2) to show defendant's notice of the generally hazardous nature of the accident site. *Turgeon v. Commonwealth Edison Co.*, 258 Ill. App. 3d 234, 239, 630 N.E.2d 1318, 1322 (1994). If the evidence is being offered to show a particular hazard, then substantial similarity of occurrences must be shown. *Turgeon*, 258 Ill. App. 3d at 239, 630 N.E.2d at 1322. However, when the evidence is being offered for the limited purpose of establishing notice, the proponent does not have to establish a foundation showing the similarity between the prior accidents and the present accident. *Turgeon*, 258 Ill. App. 3d at 239-40, 630 N.E.2d at 1322. Evidence of dissimilar prior accidents is relevant to

the issue of whether the defendant knew the accident site was generally hazardous. *Turgeon*, 258 Ill. App. 3d at 240, 630 N.E.2d at 1322. However, the proponent may not introduce details of the prior dissimilar accidents when he is offering the evidence only to show knowledge of the hazardous nature of the site. *Turgeon*, 258 Ill. App. 3d at 240, 630 N.E.2d at 1322-23.

We do not instruct the trial court to admit such prior-escape evidence on remand. We only direct the trial court to reconsider the proffered evidence based on the above legal standard. Accordingly, the judgment of the circuit court of Kankakee County is reversed and remanded for a new trial with directions to reconsider the admissibility of the previous escape evidence.

Reversed and remanded with directions.

SLATER, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, specially concurring:

I concur in the result reached by the majority, but I respectfully disagree with the basis for its decision.

The issue presented is whether the court erred in directing a verdict for the defendants at the close of all the evidence. The standard of review for judgments *n.o.v.* and directed verdicts was set forth in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494 (1967). Judgments should be entered or verdicts directed only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d at 510.

To recover under the Illinois Domestic Animals Running At Large Act (510 ILCS Ann. 55/1 *et seq.* (Michie 1995)), the *plaintiff* must allege and prove that the defendants did not use reasonable care in restraining the animal and that the defendants had no knowledge that the animal was running at large. *Abadie v. Royer*, 215 Ill. App. 3d 444 (1991), *appeal denied*, 141 Ill. 2d 535 (1991); *O'Gara v. Kane*, 38 Ill. App. 3d 641 (1976).

There is no dispute that defendants were unaware that the bull was loose until after the accident. The remaining element required by the statute is whether defendants exercised reasonable care in restraining the bull from running at large.

The evidence adduced by the plaintiff on the question of reasonable care consisted of testimony by defendant Keith Bauer that the fence around the feedlot from where the bull escaped was not electrified, although other fences on the farm were electrified; sturdier

cattle panels than those used by the defendants were readily available for purchase; that he knew the bull could jump at least four feet, yet he used a fence only four to five feet high; that steel fence posts around the feedlot were merely driven into the ground, while other posts were sunk in concrete; and that he stored hay within a few feet of the feedlot fence.

Viewing this evidence in the light of the *Pedrick* rule, I believe the verdict was improperly directed for the defendants. The evidence, when viewed in the light most favorable to the plaintiff, did not so overwhelmingly favor the defendants that no contrary verdict could ever stand, and I would therefore reverse the directed verdict on that basis.