(No. 10144.—Leave to file briefs.)
CARRIE R. HEMPSTEAD *et al.* Defendants in Error, *vs.*
CHARLES MARKS BROAD, Plaintiff in Error.

*Opinion filed February 20, 1918—Rehearing denied April 3, 1918.*

APPEALS AND ERRORS—*burden is on defendants in error to prove plea in bar of writ.* Where defendants in error .file a plea in bar of a writ of error alleging a release of error by the acceptance of a sum of money by the plaintiff in error after becoming of age and with full knowledge of an agreement between his guardian and the executor of his mother's will for the payment of said sum to settle any right of appeal from a decree construing the will, the burden is on the defendants in error to prove the allegations of the plea, although they are obliged to depend on the testimony of parties whose interests are adverse to theirs.

CARTER, C. J., dissenting.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

C. P. GARDNER, for plaintiff in error.

J. M. RIGGS, NELS F. ANDERSON, and ROBERT C. MORSE, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a writ of error sued out of this court by Charles Marks Broad, plaintiff in error, to review a decree of the circuit court of LaSalle county rendered in 1910 in a suit brought by the executors of the last will and testament of Mary E. McIntire, deceased, to construe said will. Three pleas in bar of plaintiff in error's right to prosecute the writ of error were filed by defendants in error. Plaintiff in error demurred to the first and second pleas and filed a replication to the third, to which defendants in error filed rejoinders tendering issues of fact. The first and second pleas raised issues of law, only, and these issues were submitted on the demurrers for decision. The pleas were held bad and

the demurrers to them sustained at the October, 1916, term of this court. (*Hempstead* v. *Broad,* 275 Ill. 358.) The cause was then referred to a commissioner to take the evidence of the respective parties upon the issues of fact raised by the third plea and replications thereto and rejoinders to the replication, and report the same, together with his conclusions thereon, to this court. Said commissioner heard the evidence, reported the same, and his conclusions therefrom that the proof did not sustain the plea. The commissioner notified the solicitors of the respective parties of his findings and conclusions from the evidence. Counsel for defendants in error filed with the commissioner exceptions to his report, which were overruled by him and have been renewed in this court. The nature of the case and the decree entered therein in the LaSalle county circuit court, which this writ of error was sued out to reverse, will be found stated in the opinion in *Hempstead* v. *Broad, supra.*

The third plea of defendants in error to the writ of error alleged that plaintiff in error, Charles Marks Broad, should not maintain his said writ of error because by the decree of the circuit court of LaSalle county the property there in litigation between Nicholas J. Demerath, then living but now deceased, and plaintiff in error, was by the decree of said court adjudged to be the property of Demerath and not the property of plaintiff in error; that plaintiff in error was then an infant seventeen years old and lived and had his residence with his father, Charles A. Broad, in Cook county; that after the decree was entered, and while plaintiff in error was so living with his father, his father was appointed by the probate court of Cook county, July 15, 1910, guardian of the person and property of plaintiff in error and qualified and gave bond as such guardian; that thereafter, November 21, 1910, plaintiff in error's father, as his guardian, received and accepted from Demerath $6000 in consideration and payment for the promise and agreement of Charles A. Broad, father and guardian of plaintiff

in error, that said decree of the circuit court of LaSalle county should remain a final adjudication, unquestioned and in full force as to the property rights of plaintiff in error and Demerath in the subject matter then and there litigated between them and adjudicated; that thereafter said guardian, on August 21, 1914, after plaintiff in error had attained the age of twenty-one years, paid to him said sum of $6000, and plaintiff in error then and there accepted the same, retained and appropriated it and continues to retain and appropriate it to his own use with knowledge of the source from which his guardian obtained it and with knowledge of the purpose for which it was so paid to and received by plaintiff in error's said guardian. The plea further alleges that the plaintiff in error thereby ratified and confirmed the promise and agreement of his guardian with Demerath and waived and released all errors, if any, which were committed by the circuit court of LaSalle county in the rendition of said decree. The replication of the plaintiff in error denied he received, accepted and appropriated the $6000 with knowledge of the source from which it came and the purpose for which it was paid to and received by his guardian. The replication alleged that the payment of said $6000 by Demerath was a gift and not for the purpose of securing a release of errors committed by the circuit court of LaSalle county in the entry of its decree. The replication further alleged that plaintiff in error brings into court said $6000, together with interest thereon at the legal rate from the date of its receipt, to abide the further order of the court. The rejoinders traversed the denials of the replication that plaintiff in error accepted the $6000 with knowledge of the source from which and purpose for which it was paid to the guardian.

In *Hempstead* v. *Broad, supra,* this court held that the guardian could not consent to the decree when entered and waive the right to an appeal or writ of error and could not afterwards do the same thing in a different way. As to

the third plea the court said: "It is essential to an estoppel *in pais* that the act of the party estopped should be with a knowledge of the facts. Such an estoppel is founded upon equitable considerations for the promotion of justice. (10 R. C. L. 694.) If plaintiff in error voluntarily accepted $6000 with full knowledge of the facts it would be contrary to justice and unconscionable to permit him to set aside the decree, but without such knowledge his act could not work an estoppel."

Grace M. Demerath was the mother of plaintiff in error and the wife of Nicholas J. Demerath at the time of her death. Plaintiff in error was her son by Charles A. Broad, from whom she had been divorced. Mrs. Demerath died at her home in Kewanee, Illinois, where she resided with her husband, Nicholas J. Demerath, December 8, 1908. She left a will, by which she bequeathed to plaintiff in error $2000, to be paid him when he became of age, and the residue of her property, as we understand it, she gave to her husband. Mary E. McIntire, mother of Mrs. Demerath, died in March prior to the death of Mrs. Demerath. She was the owner of a large estate and left a will devising the estate to her four daughters. To each of the daughters she devised certain real estate, the devise to Mrs. Demerath being of 174 acres of land in Bureau county, near the village of Walnut, and called in this record the Walnut farm. The sixth paragraph of her will stated that it was the intention and desire of the testatrix that the property bequeathed by the will should "go to each of my said daughters as described herein, and to the heirs of their bodies or direct descendants, and to no one else, and if either of my said daughters shall decease before inheriting under this will and leave surviving no children nor descendants of children, such share shall go to the survivors of the legatees herein." Certain powers were given the executors to sell the land and execute deeds therefor. Plaintiff in error had lived with his mother until her death, except for a short time when he was

282 – 37

away at school, and after her death he went to school at
Notre Dame, Indiana, about two years, and then to a mili-
tary academy at Delafield, Wisconsin, about three years,
graduating from the last named school a few months be-
fore he was twenty-one years old.

After the death of Mrs. Demerath certain interviews oc-
curred between Nicholas J. Demerath and Charles A. Broad,
father of plaintiff in error, relative to the provision made
for plaintiff in error by his mother's will. Broad testified
before the commissioner that he doubted the genuineness
of the signature of Mrs. Demerath to her will and procured
a handwriting expert to examine the signature and com-
pare it with other signatures known to be genuine. He tes-
tified that Nicholas J. Demerath said Mrs. Demerath had
intended to give her son, plaintiff in error, a greater sum
than $2000 but had died without making such provision;
that he thought she had intended her son should receive
$10,000. These interviews between the two men resulted
in two certain instruments being executed by them Febru-
ary 19, 1909. The first one is called a declaration of trust,
and is as follows:

"Know all men by these presents, that I, Nicholas J. Demerath,
husband of Grace M. Demerath, deceased, and nominated by her
as executor of her last will and testament now on file in the clerk's
office of the county court of Henry county, Illinois, knowing that
it was the intention of said decedent, Grace M. Demerath, to make
and execute another last will and testament in place of the one
hereinbefore referred to in order to make further and additional
provision for her son, Charles Marks Broad; and whereas she, the
said Grace M. Demerath, has departed this life without carrying out
her intentions as expressed to me; and whereas, further, it is my
wish and desire to carry out, as fully as possible, the wish and in-
tention of said Grace M. Demerath, deceased, to provide for her
said son, Charles Marks Broad; and whereas it was her intention
to give to her said son, Charles Marks Broad, the sum of eight thou-
sand dollars ($8000) out of the estate which she received from her
mother, in addition to the sum of two thousand dollars ($2000) be-
queathed to him in the last will and testament now on file, as afore-
said; and whereas it was her further intention to give said sums of
two thousand dollars ($2000) and eight thousand dollars ($8000),

to-wit, the sum of ten thousand dollars ($10,000), to the said Charles Marks Broad outright, to be his absolutely and forever:

"Now, therefore, in consideration of the premises and one dollar ($1) to me in hand paid, and in further consideration of the settlement of any contest in the matter of the said estate of said Grace M. Demerath, deceased, and of any contest of said last will and testament now on file in the clerk's office of said county court of said Henry county, Illinois, and in full settlement of any and all claims of the said Charles Marks Broad in and to the estate of his mother, the said Grace M. Demerath, deceased, I do hereby publish and declare that I hold ten thousand dollars ($10,000) of said estate of said Grace M. Demerath, deceased, as above mentioned, in trust for the said Charles Marks Broad, and that I will, as soon as conveniently may be upon the settlement of said estate, pay over to the said Charles Marks Broad or his legal representatives said sum of ten thousand dollars ($10,000) to be his absolutely and forever, and upon such payment, as aforesaid, the trust provision as to the two thousand dollars ($2000) bequeathed to the said Charles Marks Broad in said last will and testament of Grace M. Demerath, deceased, shall be null and void.

"This declaration is made upon the assumption that Grace M. Demerath, deceased, received one hundred seventy-four (174) acres, more or less, of farm land, known as the Walnut farm, situated in Bureau county, Illinois, as her own, absolutely and forever, and not a life estate therein with reversion to said Charles Marks Broad. If, however, upon the construction of the last will and testament of Mary McIntire, deceased, by a court of competent jurisdiction, it should be found that the said Charles Marks Broad was entitled to said Walnut farm, that then and in such case the ownership of the said farm shall be taken and considered as his interest in the estate of his mother, Grace M. Demerath, deceased, in lieu of the ten thousand dollars ($10,000) herein declared to be his interest in said estate; and in further consideration of the settlement of the estate as herein set forth, I, the said Nicholas J. Demerath, in order to secure the interest of said Charles Marks Broad, as aforesaid, do agree to execute a note for ten thousand dollars ($10,000), bearing interest at the rate of five per cent (5%) per annum from the first day of July, A. D. 1909, secured by a first mortgage or trust deed upon the above referred to one hundred seventy-four (174) acres of farm land, known as the Walnut farm.

"In witness whereof I have hereunto set my hand and seal this 19th day of February, A. D. 1909.

NICHOLAS J. DEMERATH. (Seal)

"Signed, sealed and delivered in duplicate in the presence of
George E. Swartz."

The other agreement executed at the same time is as follows:

"This agreement, made and entered into this 19th day of February, A. D. 1909, by and between Nicholas J. Demerath, of Kewanee, Henry county, Illinois, and Charles A. Broad, of the city of Chicago, county of Cook and State of Illinois:

"*Witnesseth,* that in consideration of the declaration of trust this day made by the said Nicholas J. Demerath as to the right, title and interest of said Charles Marks Broad in and to the estate of his mother, Grace M. Demerath, deceased, and in further consideration of the settlement and adjustment of all claims which the said Charles Marks Broad may have in and to the estate of his mother and all his right, title and interest therein, it is agreed by and between the parties hereto that the interest of the said Charles Marks Broad as set forth and declared in the declaration of trust above referred to is a fair and proper settlement of the right, title and interest of the said Charles Marks Broad in and to the estate of his mother, and that there shall be no contest made or brought on account of said interest or over said last will and testament.

"In witness whereof the parties hereto have hereunto set their hands and seals this 19th day of February, A. D. 1909.

NICHOLAS J. DEMERATH, (Seal)<br>CHAS. A. BROAD.   (Seal)

"Signed, sealed and delivered in duplicate in the presence of
George E. Swartz."

On May 8, 1909, a bill was filed by the executor and executrix of the last will and testament of Mrs. McIntire in the circuit court of LaSalle county, praying that the court construe the will and determine whether the daughters of the testatrix took life estates or estates in fee in the property devised them. In June, 1910, a decree was rendered in that case, finding that Grace M. Demerath and the other daughters took an absolute fee in the property given them, and that Grace M. Demerath owned the Walnut farm in fee at the time of her death. Plaintiff in error was a party defendant to that suit and was served by publication, and notice was mailed to him at Notre Dame, where he was attending school. He was represented at the hearing by a guardian *ad litem* appointed by the court. The father of plaintiff in error employed a lawyer, George E. Swartz, who also represented the interest of plaintiff in error at the hear-

ing of the case in the circuit court. An appeal was prayed from that decree by the guardian *ad litem* and Swartz, counsel employed by Charles A. Broad, and allowed upon filing a bond within a time limited and presenting a certificate of evidence. No appeal was perfected from the decree and no effort made to review or reverse it until this writ of error was sued out by plaintiff in error after attaining his majority.

It is clear from statements contained in the declaration of trust that the agreement of Demerath to pay $8000 to plaintiff in error in addition to the $2000 bequeathed him in his mother's will, contemplated, and Demerath and Charles A. Broad understood and intended, it to be in lieu of any rights plaintiff in error might claim in and to the estate of his mother, including the Walnut farm. It was stipulated in the declaration of trust that it was made on the assumption that Grace M. Demerath took an absolute fee in the Walnut farm and not a life estate, but that if the will of Mary McIntire should be construed by a court of competent jurisdiction and it should be found and held that plaintiff in error was entitled to the Walnut farm, then the farm should be considered as his interest in the estate of his mother in lieu of the $10,000 declared in the declaration of trust to be his interest in said estate. If the estate was settled in accordance with the understanding of the parties to the declaration of trust and agreement, Demerath was to execute a note for $10,000, bearing five per cent interest, secured by a first mortgage or trust deed upon the Walnut farm. By the agreement executed by Demerath and Charles A. Broad at the same time and being substantially a part of the declaration of trust, plaintiff in error's father agreed the trust agreement and settlement was of all claims plaintiff in error had in and to the estate of his mother; that the interest of plaintiff in error set forth in the declaration of trust was a fair and proper settlement, and that there should be no contest made or brought on account of said interest or over said last will and testament. At the time these instru-

ments were executed no action had been begun by anyone to
construe the will of Mrs. McIntire, but a bill for that pur-
pose was filed May 8, 1909, resulting in a decree, something
more than a year later, construing the will, as we have above
stated.   No note was given by Demerath for the $8000, in
accordance with the declaration of trust, until July 8, 1910,
when he executed a note for $8000, payable to Charles A.
Broad, trustee, for the plaintiff in error, due on or before
November 15, 1910, without interest.   On July 15, 1910,
Charles A. Broad was on his own petition appointed guard-
ian of plaintiff in error.   The petition represented plaintiff
in error had an estate of $8000.   The guardian filed an in-
ventory in the probate court inventorying the $8000 note
as the only property of his ward.   On November 18, 1910,
Demerath filed a petition in the probate court in which he
represented that Grace M. Demerath left a will in which
she bequeathed plaintiff in error $2000; that the will was
executed prior to the death of her mother, Mrs. McIntire,
from whom Mrs. Demerath "inherited" certain property;
that it was the intention of Mrs. Demerath to make another
will, giving her son (plaintiff in error here) a certain pro-
portion of her estate received from Mrs. McIntire, but that
she died without having made such provision.   The petition
recites that Demerath desired and undertook voluntarily to
carry out what he believed to have been his wife's intention;
that he estimated the proportion the plaintiff in error would
have received if his mother had made a will at $8000, in
addition to the $2000 bequeathed him, and that he (Dem-
erath) had made a voluntary gift of said note to Charles
A. Broad, in trust for plaintiff in error, prior to his ap-
pointment as guardian.   The petition further alleged that in
settling the estate of Mrs. McIntire it was discovered to be
less than petitioner had supposed, and that $6000, instead of
$8000, would be the proportional amount which plaintiff in
error should receive.   Petitioner desired to pay $6000 in
satisfaction of the note for $8000, and alleged the guardian

possessed full knowledge of all the facts and was willing to accept $6000 in satisfaction of the $8000 note. An order permitting this was asked of the court. On November 21, 1910, the guardian also filed a petition in the probate court of Cook county in which he represented that the note inventoried was in the nature of a gift; that it was now proposed to pay $6000 in place of $8000, and that the guardian believed it to be to the best interest of his ward that he be permitted to accept and receive $6000 in satisfaction of and in lieu of the $8000 note, and recommended that an order of the probate court to that effect be entered. The probate court entered an order in accordance with the prayer of the petitions, and on November 21, 1910, Demerath paid Charles A. Broad $6000 in cash, and Broad wrote across the face of the note "Paid," with the date of the payment, and signed his name and delivered up the note to Demerath. This sum of $6000 was paid over to plaintiff in error upon his attaining his majority, and he was also paid the $2000 bequeathed him by the will of his mother.

It seems quite plain that Demerath and Charles A. Broad understood and intended that the declaration of. trust and the agreement entered into between them February 19, 1909, was a settlement of any interest or right plaintiff in error might have or claim in or to the Walnut farm. At the time that agreement was made no bill had been filed to construe the will of Mrs. McIntire, but it is clear from the provisions of the declaration of trust that there was a question about the ownership of the Walnut farm and that there was a possibility of a suit to construe the McIntire will for the purpose of determining that question. At the time that settlement or agreement was made Charles A. Broad was not the guardian of plaintiff in error but acted in the capacity of trustee for his son. He was not appointed guardian until July 15, 1910, which was after the decree was entered construing the McIntire will. The $8000 note was given Charles A. Broad as trustee for plaintiff in error July 8,

1910, a few days before his appointment as guardian, and, as we understand it, one day after the time for appeal from the decree construing the McIntire will had expired. The note was payable on November 15, 1910, and the reduced amount ($6000) was paid to the guardian of plaintiff in error by Demerath on November 21, 1910.

We think it was unquestionably shown by the proof taken by the commissioner that when the money was paid by Demerath to Charles A. Broad it was understood and agreed that no attempt would be made to disturb the decree of the circuit court of LaSalle county construing the McIntire will; that said decree was to remain as a final adjudication of the rights of the parties there involved, and that Demerath was the owner of the Walnut farm. This is conclusively shown by the testimony of Swartz, who acted as counsel for Charles A. Broad in the preparation of the declaration of trust and the agreement and in all negotiations with Demerath until the $6000 was finally paid, together with the correspondence had between Broad, his attorney and Demerath. If plaintiff in error received the $6000 with full knowledge of the facts, he would, as held in *Hempstead* v. *Broad, supra,* be estopped from prosecuting this writ of error. The question then is narrowed down to whether plaintiff in error received and appropriated the $6000 with full knowledge of the facts and purposes for which it was paid.

Demerath is dead. Swartz, the attorney for Charles A. Broad, was never present during any conversation between the father and son, and the only persons known who know whether plaintiff in error was ever told by his father or learned from any source the terms and conditions upon which the $6000 was paid and the purposes and agreements upon which it was paid, are Charles A. Broad and plaintiff in error himself. We do not care to discuss or analyze the testimony of Charles A. Broad further than to say it indicated he had a wretched memory. While attempting to

make it appear that the $6000 was paid for the purpose of preventing a contest of the will of Grace M. Demerath, it is clear from his testimony and from the trust agreement that Nicholas J. Demerath's claim and title to the Walnut farm should never be questioned or attempted to be disturbed by plaintiff in error. That this is true is shown beyond dispute by the additional testimony of the attorney, Swartz, and the correspondence introduced in evidence. Of course, after denying that such was the agreement between him and Demerath, Charles A. Broad denied informing his son, plaintiff in error, at any time, of the terms, conditions and agreements upon which the $6000 was paid to him by Demerath.

Plaintiff in error testified that while attending school at Notre Dame, after his mother's death, he received information about the McIntire will, partly by correspondence and partly in conversation with his father, and that copies of both his mother's and grandmother's wills were sent to him; that his father said very little to him about the McIntire will; that he (witness) read the will but that it was like Greek to him and that he did not understand it; that his father expressed the opinion to the witness that under the McIntire will the witness was entitled to the Walnut farm, but that the witness was young and did not think much about it. He testified that he was disappointed that his mother had not made more substantial provision for him. He testified he had heard his grandmother, Mrs. McIntire, who owned a large estate, say she intended to make a will so that the husbands of her daughters should not come into possession of any of her property. He further testified that when he read the will he knew nothing about the Walnut farm, but that he remembered that part of it "about the blood heirs" from having heard the talk of his grandmother, above mentioned. He testified he had great confidence in his father and that he would look after his interests but that his father told him very little. His father did tell him

of the agreement with Demerath by which witness was to
receive $10,000, and that this information was given him
shortly after the agreement was made. He testified he did
not know the agreement involved his giving up anything;
that he understood Demerath was making him a gift; that
Demerath thought the witness' mother intended to give him
more than $2000 but died before doing so, and that Demer-
ath would make it $10,000 to carry out Mrs. Demerath's
wishes as near as he could. The witness further testified
that while at school at Notre Dame he received and read a
printed notice of the suit in LaSalle county and sent it to
his father. He could not remember that his father replied
or wrote him that the suit was for the purpose of determin-
ing the ownership of the Walnut farm. As far as he could
remember he did not. He could not say that his father told
him of the result of the suit after he came home from school.
He could not remember that his father ever mentioned the
suit in LaSalle county. He might have heard of the na-
ture and result of the lawsuit but could not remember. He
signed the request for the appointment of his father as his
guardian.

The declaration of trust and agreement between Dem-
erath and Charles A. Broad were executed in duplicate, and
while Charles A. Broad testified that he did not remember
whether one copy was left with him until the note was paid,
we think it clear that it was. Plaintiff in error testified that
he had never seen the instruments that he remembered of,
until he saw them at the hearing before the commissioner,
and that his father had never told him he had such papers.
Witness' father told him he had agreed not to contest his
mother's will. After becoming of age witness testified he
received the $2000 under his mother's will and the $6000 on
the note paid by Demerath; that he was not satisfied with
it, and "then I thought, what about this Walnut farm?"
that he thought he received information from his father
which caused his dissatisfaction about the Walnut farm;

that he had information about the farm before he received the $6000. He was asked if he would have been dissatisfied if he had received both the farm and the $6000, and after a colloquy between counsel on both sides and the commissioner he answered the farm had nothing to do with it; that the gift was to be $10,000 at first, then it was cut down to $8000 and then to $6000; that it was a gift to him from Demerath because he thought Mrs. Demerath had not left the witness enough. The witness further testified that after receiving the $6000 he determined to investigate his grandmother's will. He denied that his father had ever told him or that he knew that the consideration for the payment of the $6000 by Demerath was an agreement not to assert any claim of the witness to the title to the Walnut farm and to prosecute no appeal from the decree rendered by the circuit court of LaSalle county on the bill to construe the will of Mrs. McIntire.

The testimony of plaintiff in error warrants the conclusion that he knew there was a question about the ownership of the Walnut farm, and he says that his father expressed the opinion to him that under the McIntire will he (witness) was entitled to it. Plaintiff in error, as we have seen, testified he was dissatisfied with the receipt of $6000, and "then I thought, what about this Walnut farm?" All this goes to show that he knew about the Walnut farm and had in mind that he had or might have some claim to it under the McIntire will. This, however, was not the precise issue made by the pleadings. The plea alleged, and the burden was on defendants in error to prove, that plaintiff in error had full knowledge of the agreement between his father and Demerath under which the $6000 was paid by Demerath, at the time he received said sum from his father as guardian. For proof to sustain their plea defendants in error were compelled to depend upon the testimony of the persons whose interests depended upon defendants in error not being able to make the proof. Both plaintiff in error

and his father testified contrary to the facts alleged in the plea as to the plaintiff in error's knowledge of the objects and purposes for which the $6000 was paid his father for him, before and at the time he received such sum from his father and guardian. We agree, therefore, with the commissioner that defendants in error failed to sustain the issue raised by their plea that plaintiff in error had knowledge of the agreement and of the objects and purposes for which he received the $6000 from Demerath, and that he is not barred by reason of anything alleged in said plea from maintaining his writ of error.

Leave is granted defendants in error to join in error and to both parties to file briefs on the merits, and plaintiff in error is required to keep his tender of the $6000 good until the merits of the suit are determined.

*Leave to join in error and file briefs.*

Mr. Chief Justice Carter, dissenting.